BANK OF SAN JUAN, PLAINTIFF AND APPELLANT, *v.* ESTEVES, DEFENDANT AND APPELLEE.

APPEAL from the First District Court of San Juan in Injunction Proceedings.

No. 2588.—Decided June 12, 1923.

PUBLIC DOMAIN—EXPROPRIATION—USURPATION.—The Act providing for the recovery of the possession of real estate by injunction does not place upon insular officials charged by law with the care of lands belonging to The People of Porto Rico any new or peculiar duties that are not equally obligatory upon other owners or custodians of real estate; nor was that Act designed to aid or to encourage the agressive usurpation and expropriation of any part of the public domain by private individuals or corporations in possession of adjoining lands through the simple process of annexation, whether surreptitious and gradual or open and spasmodic.

The facts are stated in the opinion.

*Messrs. M. Tous Soto* and *V. M. Fernández* for the appellant.

*The Attorney. General* and *Messrs. L. Samalea* and *C. Llauger Díaz* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The court below, after a hearing on a rule to show cause why an injunction should not issue, and without passing upon the facts disclosed by the evidence adduced, sustained a demurrer to the petition and entered a judgment of dismissal for want of jurisdiction upon the theory that the action was in substance against The People of Porto Rico.

The only error assigned goes to the soundness of this ruling.

The complaint alleges, among other things, that petitioner is the owner of a strip of land 290 meters in width by 388 meters in depth, of record in the registry of property and subdivided into lots; that defendant, the Commissioner of the Interior, through the employees of his office, is disturbing petitioner in the enjoyment of this property, has entered upon the same on various occasions and attempted to do so at other times, endeavoring to destroy the boundary monuments and improvements existing thereon and is attempting by means of his authority and coercively to limit the possession and enjoyment of petitioner to an area smaller than that pertaining to the property, to this end altering the southern boundary in its entirety and the eastern and western boundaries in part; also that there is no outstanding title, either of ownership or possessory right, in favor of anyone adverse to that of petitioner to the land described or to any part thereof.

Defendant opposed the issuance of an injunction for the following reasons, among others:

"Because it is alleged in the complaint that the whole property belongs to the plaintiff and it appears from the title referred to in the third count of the complaint filed together with the petition

that the plaintiff is not the owner of the whole property, but of the portion remaining after deducting the difference taken from it and recorded in the registry of property, and there being no averment or description in the complaint of the portion in the said property acquired by the Bank of San Juan, nor any allegation that the acts imputed to the defendant were committed on the part belonging to the Bank of San Juan, or on any other part under the care, administration or control of the Bank of San Juan.

"(b) That the People of Porto Rico is the owner and in possession of the mangrove flats of an area of 270.07 acres forming parcel No. 5 in the plot of mangrove flats of The People of Porto Rico, Bay of San Juan, bounded on the north by lands of the Successions of Cerra, Ramos and Figueroa, The People of Porto Rico, Porto Rico Brewing Co., Vannina, Avelino Vicente, Bernabé Sabalier, C. Andrade, Rafael Fabián, Rosa Echevestre, Pedro Bolívar, Wenceslao Bosch, Succession of Rosales; on the south by the Martín Peña Channel; on the east by the trolley track; and on the west by the road from Santurce to Bayamón.

"That there has existed for some time and now exists, a controversy or dispute between the plaintiff and The People of Porto Rico as to the ownership of a certain parcel of land, originally mangrove flats, which is included in the said property of The People of Porto Rico, and that the parcel which is the object of the present controversy is bounded on the north from points 345 to 351, inclusive, by land of Bernabé Sabalier; on the east for 425 meter from point 351 N. to 410 S., and on the west for 330 meters from point 345 N. to 413 S.

"And it is alleged by the defendant that on the said mangrove flats the defendant, as Commissioner of the Interior of Porto Rico, always has committed, prior and subsequent to May 22, 1920, and now commits all acts appertaining or inherent to the exercise of the right of ownership and possession of the said property; and that if the acts sought to be imputed to the defendant were committed, they were committed within the said mangrove flats belonging to The People of Porto Rico, whose custody, administration and control are entrusted to the defendant as the Commissioner of the Interior of Porto Rico."

Counsel for petitioner admitted that a plan offered by defendant had been duly prepared after a survey made by

the engineers Castro & González in the performance of their official duties, and that the same "represents the respective situation of the mangroves of San Juan Bay, among which is that of Mr. Sabalier," predecessor in interest.

Neither this plan nor the deeds said to have been filed below together with the complaint are included in the transcript, although reference is made to the plan indicative of a purpose to have it brought up as an original document.

Some six weeks or more before filing the petition for an injunction, petitioner addressed a communication to the chief of the Division of Public Lands and Archives of the Department of Interior enclosing a copy of the deed under which it claims and a plat.

This letter says that the bank, having learned that the Department was about to make a survey of the mangrove swamps, hastens to present its contentions "so that they may be taken into consideration in making the survey." Follows a description of "The south parcel which adjoins the mangrove swamp." This description calls for swamp lands belonging to The People of Porto Rico not only as the southern boundary, but also as forming in part the eastern and western boundaries. The area is shown to be 13.45 *cuerdas,* of which the bank says "Mr. Sabalier is in possession of only 3.83 *cuerdas."* Then comes the following:

"These facts being established, we will make our petition to that Department in the manner stated, as follows: First:—We desire that that Department make us a survey of the southern part bounded by the mangrove flats, taking into account our title which is duly recorded and the plan made by the engineer Morales, Sr., and we allege that we have spent about one thousand and five hundred dollars in draining part of that portion which we consider belongs to us; that we will continue to drain the remaining portion up to our boundary; that for a long time we have

been paying taxes on five acres of land when there are only 3.83 acres; that at present the value of the five acres has been increased from $4,900 to $20,900, as you may see from the tax receipts and from the notice from the Treasurer of Porto Rico. Second:—We allege that in dividing the said land into lots for the urgent benefit of the laboring element we have been compelled to dedicate to street purposes about 4,500 meters, which will be proved as soon as Armando Morales, Jr., finishes the survey and plan of that southern parcel. Third:—And finally we request the Department to grant us the right possessed by every adjoining owner of continuing to drain and make use of the part belonging to The People of Porto Rico which bounds his property, the preference according to the law and custom. However, we are willing to abide by the rules and regulations adopted by the Department for making that concession. We also request to be notified of the day when the survey is to be made. Very sincerely, Bank of San Juan. Attorney Abraham Peña, President.''

A few days later in a letter to the Commissioner of Interior the bank complains that a surveyor had begun work without · previous notice to the bank, without having been informed of the bank's claims and without giving proper consideration thereto and asks that the work be stopped until the Commissioner can pass upon the matter.

Two weeks thereafter the bank's attorney reports to the Assistant Commissioner, as the result of an investigation made by the attorney, that certain of the bank's tenants, without knowledge of the administrator of the property, had been ''filling in'' their lots with sand and had received peremptory orders to discontinue this process. The attorney also reports progress in the examination of title papers with a view to an early adjustment of the question then pending, refers to a previous conversation in regard to the consent of the Department to the making of repairs upon certain roofs, and gives the names of the individuals concerned so that an order authorizing such repairs may be issued.

A letter of even date from the Assistant Commissioner acknowledges receipt of the above and encloses an order authorizing the inspector of public buildings to permit the repair of the roofs in question by specifically excluding any extension or enlargement of the buildings involved.

Two days before the date of the two communications last above mentioned the Assistant Commissioner had given the inspector of public buildings the following information and instructions:

"Sir:—Mr. Lao Flores, who is in charge for the San Juan Bank of its property in Santurce, complains to this office that on Saturday you destroyed a part of a shed of the house of Etanislao Delgado and of a poor woman who were not making any new construction. It has been agreed upon by the Department and the representatives of the Bank of San Juan not to commit any act of authority on its land, while the said Bank on its part shall not make any new constructions, nor urbanization, or construction of sidewalks on the said land, which, as asserted by the Department, belongs to The People of Porto Rico. Therefore, if the above statement is true, as asserted by Flores, you are committing an error. Hereafter please confine yourself to a daily inspection of that land and immediately communicate with this Department any new construction that may be made. Very truly yours, (Signed) Jesús Benítez, Assistant commissioner. Mr. Rogelio Jiménez, Assistant Inspector of Public Buildings, San Juan."

Inasmuch as no question seems to have been raised with reference to the title of The People of Porto Rico to the mangrove marshes, we need not discuss the Proclamations introduced in evidence by defendant.

Félix Alamo, a witness for petitioner, testified that the lands now claimed by the bank are bounded on the south by Martín Peña Channel, that witness had lived there as a tenant paying rental since 1919, that the lands are crossed by an electric transmission line, on one side of which is pasture and on the other marsh; that the pasture has been

there for some years, how many witness does not remember.

The testimony of another witness, José Ortiz, is more or less to the same effect.

The third witness, Lao Flores, had been in charge of the property for about a year at the time of the hearing. He says that "from the electric transmission line up" the ground is covered with houses, there being left, perhaps, one or two vacant lots; that there are also houses below the electric transmission line; that shortly before the date of the correspondence above mentioned Rogelio Jiménez with two prisoners, a prison guard and an insular policeman appeared on the scene and began to destroy vacant houses; that embankments below the transmission line and houses both above and below such line were torn down; that thereafter the Assistant Commissioner granted a permit to those individuals whose houses were unfinished authorizing them to complete the work.

For the purposes of this opinion it may be conceded that the facts stated in the petition constitute a cause of action, and that the proceeding is not, as held by the court below, in substance an action against The People of Porto Rico.

But the facts alleged in the petition were not established at the trial. The averment as to the absence of any outstanding claims or conflict of title is not only unsupported by any evidence but is wholly without foundation in fact. The acts of Rogelio Jiménez were repudiated without hesitation or delay by the Department, and the necessary steps to prevent any repetition thereof in the future were promptly taken. Permission to continue the work on unfinished houses, discontinuance of which had been ordered by Jiménez, was also given and there is no indication whatever of any disposition on the part of defendant to interfere in any way with such doubtful and limited posses-

sory rights as the bank may be said to have acquired with reference to the small bits of land, or of land and water as the case may be, actually occupied by the "houses" of its alleged tenants. It does not even appear that prior to the issuance of the rule to show cause the acts now complained of were ever brought directly to the attention of the head of the department.

The law providing for the recovery of the possession of real state by injunction and for the protection of actual physical possession from disturbance through a resort to violent or clandestine methods does not place upon insular officials charged by law with the care of lands belonging to The People of Porto Rico any new or peculiar duties that are not equally obligatory upon other owners or custodians of real estate, nor was that law designed to aid or to encourage the aggressive usurpation and expropriation of any part of the public domain by private individuals or corporations in possession of adjoining lands through the simple process of annexation, whether surreptitious and gradual or open and spasmodic. Much less does the law of 1908 authorizing the ordinary equitable remedy recognize any such doctrine of individual squatter sovereignty.

In *Garcia et al.* v. *Rodríguez,* 27 P. R. R. 284, some intimation was given as to how far we are willing to go in matters of this kind.

All things considered we are persuaded that the ends of substantial justice were attained in the court below, and the judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf and Aldrey concurred.

Mr. Justice Franco Soto took no part in the decision of this case.